**TUTUPU A. MEAFUA, Plaintiff**

**v.**

**SIAKI MATA'U TALIU and VINETA ALLEN, Defendants**

High Court of American Samoa
Land and Titles Division

LT No. 21-87

October 10, 1989

Before REES, Associate Justice, OLO, Associate Judge, and MATA'UTIA, Associate Judge.

Counsel: For Plaintiff, Gata E. Gurr
For Defendants, Tau'ese P.F. Sunia

Plaintiff seeks to evict the defendants from a tract of land she calls Talie.

It is undisputed that this land was registered in 1983 as the individually owned land of plaintiff and her children. It is also undisputed that the defendants are or have been occupying parts of the land. Defendants maintain, however, that the land never really belonged to Tutupu Meafua and that her registration of it did not vest title in her to the exclusion of the true owners.

Defendant Vineta Allen testified that the land in dispute is part of a far larger tract called Vaipapa, which is said to extend from the mountains to the ocean and to belong to a Vaitogi family called Ufuti. Defendant Allen contends that plaintiff's parents began cultivating the land not on their own account but because of a connection to the Ufuti family. As a member of the Ufuti family herself, Allen claims the right to occupy part of the land.

This claim should have been made within sixty days of plaintiff's offer of registration, not five years later. *See* A.S.C.A. § 37.0103(c); *Ifopo v. Siatu'u*, 12 A.S.R.2d 24 (1989); *Puluti v. Muliufi*, 4 A.S.R. 672 (1965); *Molitui v. Pisa*, 2 A.S.R. 268 (1947).

Even if the contention that this land and the surrounding area are the historic communal land of the Ufuti family had been timely raised, we would reject it on the merits. Although all three parties to the present case are from Vaitogi and therefore regard the land as belonging to Vaitogi, the most credible testimony is to the effect that the area was originally settled by Ili'ili people and that settlers from Vaitogi did not arrive until well into the present century. The land is located miles from the village of Vaitogi proper, on the far side of the village of Ili'ili; much of the surrounding land appears still to be occupied by Ili'ili people.

14

Defendant Allen's testimony that the land has always been the communal land of a Vaitogi family is therefore far less credible than the testimony of plaintiff and of defendant Siaki Taliu that their respective fathers came from Vaitogi about fifty years ago to clear and cultivate the land for themselves.

The claim raised by defendant Siaki Taliu raises a far more difficult issue. It is clear that Taliu's father worked part of this land, or perhaps another tract very close to it, for some years. Plaintiff concedes that the elder Taliu worked near her father; she says that he once encroached on her father's plantations but that her father soon put a stop to the encroachment. Defendant says his father never left until the 1970s when he became too old to tend plantations.

The choice between plaintiff's version of the history of this land and that of defendant Taliu would be a difficult one were it not for Taliu's failure to raise any objection to plaintiff's registration during the sixty days provided by A.S.C.A. § 37.0103(c). As the Appellate Division of the High Court held in *Ifopo v. Siatu'u, supra*:

> [T]he registration statute [A.S.C.A. §§ 37.0101 et seq.] gives anyone who believes himself the owner of land a fair opportunity to present his claim to the court; it then conclusively presumes that anyone who did not avail himself of this opportunity was *not* the true owner of the land.

*Id.*, 12 A.S.R.2d at 26.

Defendant Taliu testified that the land was offered for registration at a time when no land in the area was being worked by anyone in his family, since his father was old and sick and the defendant himself was otherwise engaged. Nobody in the Taliu family was there in 1982 to see the survey conducted on the land at the request of plaintiff Meafua, or the notices posted by the Territorial Registrar later the same year to the effect that Meafua had offered the land for registration and that any objections must be filed within sixty days. The result --- that Meafua's title was recorded and the Talius barred forever from pressing their competing claim --- may be a harsh one even in light of the temporary abandonment of the area by the Talius, but it is clearly the result dictated by the law then in force. *See Ifopo, supra*, and authorities

15

cited therein; *see also Vaimaona v. Tuitasi*, 12 A.S.R.2d 68, 71 (1989) (Vaivao, J., concurring in part and dissenting in part).[1]

Finally, defendant Allen contends that the registration by Meafua is invalid because it was not effected in accordance with the procedures set forth in A.S.C.A. §§ 37.0101 et seq. If it should affirmatively appear, either on the face of the public records or by other clear and convincing evidence, that a land title was registered in contravention of the statutory requirements for registration, then such registration would be of no force or effect. *Ifopo, supra*, at 28; *Faleafine v.Suapilimai*, 7 A.S.R.2d 108 (1988).

In this case, however, it affirmatively appears that the registration *was* conducted in accordance with the statutory procedures. Records of the Territorial Registrar admitted into evidence reflect that a survey was conducted on the land in October of 1982. The pulenu'u of the village of Vaitogi certified that he had given public oral notice in the village at a meeting of the chiefs of the time and place of the intended survey in order that other interested land owners might have opportunity to be present thereat. The employee of the Registrar's office designated to post notices in the village and at the Court House certified that he had

---

[1] An amendment to A.S.C.A. § 37.0103 recently enacted by the Fono will go a long way toward eliminating such results in future cases. The amendment, contained in Public Law No. 21-1, will prevent the registration of land unless the proposed registration has been advertised at least twice in a local newspaper. Thus a land claimant who is neither presently occupying the land nor privy to the proceedings of the village council will have notice that a competing claimant is about to register the land, provided only that he reads the newspapers.

Under the system that was in effect in 1982 and 1983 when the land presently in dispute was registered, a claimant who was not represented in the village council and who did not actually live on the land might easily have missed the required notices. According to the testimony of the present Territorial Registrar, it has never been the practice of the Registrar's office to make periodic visits to the telephone poles on which notices are posted to make sure that they have not been illegally removed. The posting official simply posts the notice and then certifies sixty days later that he has posted it for sixty days. Unless a potential land claimant wishes to make frequent visits to the Courthouse in Fagatogo to check for notices of pending registration, the only ways to be certain of getting notice are (1) physical presence on the land or in the immediate neighborhood, so as to be aware of any survey that might be conducted; and (2) scrupulous attention to the proceedings of the village council, so as to receive notice of any pending surveys. Although these methods are reasonably calculated to give notice to Samoans who are living in accordance with Samoan custom and tradition, the amendment embodied in Public Law 21-1 recognizes the increasing likelihood that they will not reach all potential claimants.

16

done so.[2] The only evidence that the procedures were not followed was the testimony of Ulu, a matai of the Ufuti family, that he always attends village council meetings and always checks the telephone pole near the church in Vaitogi but that he never heard an announcement and never saw a notice. Ulu admitted on cross-examination, however, that he frequently travels abroad to visit his children, sometimes for months at a time, and may have done so during 1982. Moreover,

> the Court [cannot] conclude that no notice was given simply because a number of witnesses testified that they never saw any notices. The registration statute cannot have the intended effect of affording finality to disputes and security to titles if the Court is prepared to conduct its own *de novo* review of whether there was compliance with the statute in every case where non-compliance is alleged. Rather, the Court must assume

---

[2] Counsel for defendant Meafua contended at trial that this certification was invalid, relying on a provision of A.S.C.A. § 37.0112 that "[n]o affidavit affecting the chain of title to real estate may be filed for record" unless the affidavit has first been posted for sixty days at the courthouse in Fagatogo and in the village where the land is located. This provision would appear to be a reference to the preceding section, A.S.C.A. § 37.0111, which provides that an owner in possession of land may under certain circumstances post "an affidavit explaining any defect in the chain of title" to his land. In any event the posting requirement of A.S.C.A. § 37.0112 has no bearing on the present case. A.S.C.A. § 37.0103, the section that requires posting for sixty days of a notice that an offer of registration has been made, does not require the official who posts this notice to file an "affidavit" --- or even an unsworn certificate --- that the posting has been done. It is within the discretion of the Registrar to file such a certificate for the convenience of his own office, of the Court, and of the interested public. In the absence of a certificate, however, the fact that the Registrar recorded the title at all would give rise to a strong presumption of compliance with the posting requirement. *See Ifopo, supra,* at 28.

The rule proffered by counsel for defendant Allen --- that after the Registrar posts a notice for sixty days he must make an affidavit that the notice was posted for sixty days, but cannot file this affidavit until he has posted the affidavit itself for sixty days, and would be unable to certify the posting of the latter document by any means other than yet another document which itself would presumably have to be posted for sixty days before it could be filed --- would amount to an infinite regress under which no document could ever be filed and no land could ever be registered.

The location of the land does raise one serious question about the procedural regularity of the registration: whether the notice of proposed registration should have been posted in Ili'ili as well as (or instead of) in Vaitogi. If one of the present defendants regarded himself or herself as a resident of Ili'ili or had complained that he did not receive notice because the notice was posted in the wrong village, the Court would have to consider whether posting in Vaitogi was sufficient to meet the requirements of the statute. Since all three parties to the present case regard the land as part of Vaitogi, however, none has standing to raise this issue.

17

--- and, absent compelling proof to the contrary, must conclude --- that the Registrar recorded a title only after complying with his obligations under the law.

*Ifopo*, *supra*, at 28.

Because the registration by Meafua was effected in compliance with the statutory procedures and neither the defendants nor anyone else objected within the statutory time limit, the law conclusively presumes that she was and is the owner.

Accordingly, judgment will enter in favor of the plaintiff enjoining the defendants, members of their families, their agents, employees, servants, and others in active participation with them from continuing to trespass, to plant crops, or to construct buildings or other structures on the land. Defendants must remove any structures and harvest any crops which they presently have on the land within ninety days.

It is so ordered.